IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
John H. BENNETT, Attorney at Law.

Supreme Court

*No. 83-2410-D. Submitted on briefs October 29, 1985.—
Decided November 26, 1985.*
(Also reported in 376 N.W.2d 861.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

For the appellant there was a brief by John H. Bennett, *pro se.*

For the respondent, Board of Attorneys Professional Responsibility, there was a brief by *Daniel L. Shneidman* and *Shneidman, Myers, Dowling, Blumenfield & Albert,* Milwaukee.

Attorney John H. Bennett appealed from the report and recommendation of the referee that his license be suspended for six months as discipline for unprofessional

conduct consisting of his lack of competence in representing several clients in bankruptcy proceedings and misrepresentation in his preparation and filing of bankruptcy forms. The referee also recommended that Attorney Bennett be required to pay the costs of the proceeding and, further, that the reinstatement of his license "be conditioned on an assurance that he has achieved a better understanding of what courts require in the area of his practice" and assurances that he will comply with the Code of Professional Responsibility, SCR chapter 20. While we agree that a six-month suspension of Attorney Bennett's license is appropriate discipline, the recommended condition on the reinstatement of Attorney Bennett's license is not sufficiently precise to enable Attorney Bennett, the Board of Attorneys Professional Responsibility (Board) or the court to know when that condition has been fulfilled. Consequently, we determine it appropriate to condition the reinstatement of Attorney Bennett's license on his having completed 15 hours of continuing legal education credits in the areas of his practice. This is the minimum number of hours of continuing legal education we require each lawyer practicing in Wisconsin to complete each year as a condition of continued licensure. SCR 31.02.

Attorney Bennett was admitted to the practice of law in Wisconsin in 1961 and practices in Milwaukee. He has not previously been the subject of an attorney disciplinary proceeding. The referee is Attorney Robert P. Harland.

Following a hearing, the referee made findings of fact on which he concluded that Attorney Bennett had engaged in unprofessional conduct in the following matters.

(1) In 1980 a Mrs. Haas hired Attorney Bennett to commence a divorce action, and five months later she retained him to represent her in filing for bankruptcy.

Attorney Bennett delayed filing the bankruptcy petition for seven weeks, purportedly to obtain "leverage" for the allocation of the client's and her husband's debts in the divorce proceeding. The referee rejected this reason for the delay, pointing out that, because both the client and her husband had filed for bankruptcy, their debts would have been discharged. Attorney Bennett admitted that another reason for delaying the filing was so that he could collect his fee from the client.

The referee concluded that Attorney Bennett's delay was the result of a problem he had encountered attempting to protect his client's "substantial equity" in her home, which Attorney Bennett had promised her he would preserve. The referee found that Attorney Bennett was uncertain how to proceed in the bankruptcy matter once he learned his client's equity exceeded the allowable exemption. According to the referee, Attorney Bennett's "abilities were strained." The referee further concluded that the delay did not constitute neglect but was deliberate, thereby raising questions with respect to Attorney Bennett's competence in bankruptcy law.

Between the time the client returned the signed bankruptcy petition and the time Attorney Bennett filed it, a bank brought an action against the client and garnished her checking account in the amount of $227. When she asked Attorney Bennett about this, the client testified he told her that $60 of that amount would be used to pay the filing fee and the remainder would be used to "bribe" the bankruptcy trustee to resolve the excess equity problem. Attorney Bennett, on the other hand, testified that he had told the client the remainder would be turned over to the trustee as an asset of the bankrupt's estate. The referee found that Attorney Bennett had made some "inappropriate comment" to his client, whether or not the word "bribe" was used, to explain the delay in filing the petition, the subsequent complications

with the garnishment, and the amendments to the petition which had to be made as a result.

Finding that no bribe had ever been offered to or received by the trustee or anyone else in the matter, the referee concluded that Attorney Bennett had permitted his client to believe the excess equity problem could be solved in some "extra-legal way." The referee then concluded that Attorney Bennett thereby violated SCR 20.49(3), (which the referee erroneously referred to as SCR 20.49(4)), prohibiting a lawyer from stating or implying that he or she is able to improperly influence a tribunal.

Attorney Bennett also failed to amend the bankruptcy schedules to show the bank's garnishment and failed to apply for a ruling that $60 of the garnished amount be applied to the filing fee. Among other errors appearing on the bankruptcy petition, Attorney Bennett had combined an unsecured judgment lien of the bank in the amount of approximately $2,000 with that same bank's claim which was secured by a mortgage in the amount of approximately $13,000. Consequently, the bankruptcy form listed the bank as a secured creditor with a $15,000 claim. Noting that the effect of combining the unsecured claim with the secured claim would have been to increase the bank's lien and reduce the client's equity in excess of the allowable exemption, the referee concluded that Attorney Bennett's conduct constituted fraud, in violation of SCR 20.04(4).

(2) In another client's bankruptcy, the petition filed by Attorney Bennett contained several errors, including the failure to claim a larger state exemption for the client's home and automobile, which resulted in the trustee's claiming the excess over the federal exemption claimed. Attorney Bennett then amended the petition to claim the state exemption and paid the trustee $52 in costs and attorney fees incurred in the claim for the excess.

In addition, Attorney Bennett had overlooked an available remedy in the bankruptcy proceeding to avoid a lien against his client's property. After the client had been discharged in bankruptcy, a finance company commenced a replevin action to enforce its lien on the client's furniture. The circuit court dismissed the replevin action, but it required the client, who had retained other counsel after Attorney Bennett refused to represent her, to pay $400 costs and expenses to the finance company because of the delay in acting to void the lien.

The bankruptcy court subsequently held a hearing on Attorney Bennett's fees in the bankruptcy and found that Attorney Bennett's conduct had not met "an acceptable plane of professional behavior." The court ordered him to refund his fees to the client, and Attorney Bennett twice unsuccessfully appealed that decision, which was ultimately affirmed by the Seventh Circuit Court of Appeals.

On the basis of Attorney Bennett's conduct in this bankruptcy proceeding, as well as the decisions of the federal courts concerning that conduct, the referee concluded that Attorney Bennett failed to represent his client competently, in violation of the standards set forth in SCR 20.32. [1]

(3) In a third bankruptcy matter, a form prepared by Attorney Bennett for his client indicated that no money had been paid to him by the client within one year prior to the filing of the bankruptcy petition. Further, in his statement filed in the bankruptcy proceeding, which he

---

[1] SCR 20.32 provides: "Failing to act competently. A lawyer may not:

"(1) Handle a legal matter which the lawyer knows or should know that he or she is not competent to handle, without associating with a lawyer who is competent to handle it.

"(2) Handle a legal matter without preparation adequate in the circumstances.

". . ."

improperly filed unsigned, Attorney Bennett stated that the client had paid him nothing. In fact, the client had paid Attorney Bennett $150 prior to signing the petition.

The referee found that Attorney Bennett's response on the form was false and that he had concealed the fee his client had paid him. The referee concluded that this constituted conduct involving misrepresentation, in violation of SCR 20.04(4), neglect of a legal matter, in violation of SCR 20.32(3), and a failure to represent his client competently, contrary to the standards of SCR 20.31(4).

(4) After commencing a proceeding on another client's behalf under Chapter 7 of the Bankruptcy Act, General Motors Acceptance Corporation started an action to recover on its security interest in the client's automobile. Although he had stipulated on behalf of his client to judgment in favor of GMAC, within 90 days of having filed the Chapter 7 proceeding, Attorney Bennett commenced a separate Chapter 13 proceeding on behalf of the same client in which he asserted a claim for the return of the automobile. Attorney Bennett testified he did so because it was his client's desire to retain the automobile, but the referee found that the same result could have been achieved by having the client reaffirm her loan with GMAC, as she had sufficient income to continue making the payments on the automobile. The bankruptcy judge testified at the disciplinary hearing that the commencement of the Chapter 13 proceeding while the Chapter 7 proceeding remained pending was improper and constituted an abuse of the Bankruptcy Code.

The referee concluded that it was improper for Attorney Bennett to have commenced the second proceeding and to have inserted in the petition in that proceeding his client's "agreement" to a wage deduction, even though the client had signed the petition without hav-

ing agreed to that deduction. Further, the referee found that the client would not have agreed to the wage deduction because she had been recently employed and did not want any adverse effect on her employment status. The referee concluded that Attorney Bennett undertook this legal matter without adequate preparation, in violation of SCR 20.31(4).

(5) After being informed by their staff of numerous bankruptcy cases in which Attorney Bennett appeared as counsel and in which the attorney fee statement and the debtor's statement were at variance, the three bankruptcy judges for the Eastern District of Wisconsin directed a detailed report to be made of all cases filed in 1983, in which Attorney Bennett appeared on behalf of the debtor. When the report was submitted, a copy was sent to Attorney Bennett, and he was informed that what he was doing was wrong and cautioned that unless he changed his practices, the matter would be referred to the district court. He was also asked to meet with Bankruptcy Judge Ihlenfeldt to discuss the report. The report covered 16 separate bankruptcy cases and showed numerous errors, deficiencies, inconsistencies and misleading statements appearing in the bankruptcy papers filed in those matters.

When Attorney Bennett failed to appear before the bankruptcy judges to discuss the report, after two previous meetings had been postponed at his request, the judges referred the matter to the district court for a finding of criminal contempt. The district judge denied the application on several grounds, including that the notice and order to appear before Judge Ihlenfeldt had not been personally served on Attorney Bennett but had been mailed to his office, and Attorney Bennett claimed to have had no knowledge of the notice and order until after the date of the meeting. In his decision, the judge stated, with respect to the improprieties in the numerous

bankruptcy documents filed by Attorney Bennett in bankruptcy court, "These cases reflect carelessness and unprofessional conduct on the part of Mr. Bennett, but they do not satisfy the bankruptcy judges' burden of showing beyond a reasonable doubt that Mr. Bennett has engaged in contemptuous conduct with contemptuous intent."

On the basis of the report prepared by the bankruptcy court staff and Judge Ihlenfeldt's testimony at the disciplinary hearing, the referee concluded that in representing his bankruptcy clients Attorney Bennett did not meet the level of competence required by SCR 20.32. The referee specifically found that Attorney Bennett "has shown a blatant disregard for the [bankruptcy] rules" and referred to his "irresponsible conduct in continuing to disregard the most basic and elementary requirements in representing a debtor in a bankruptcy proceeding, namely to provide an accurate Statement of Affairs, Accurate Schedules, and a truthful Attorneys Statement (regarding fees)."

In a sixth matter, the referee concluded that it was preferable to defer making findings until the federal district courts had decided appeals that Attorney Bennett had taken from the bankruptcy court's rulings. The referee recommended that this matter be "split off" and that the complaint and answer in this proceeding stand as the pleadings in a separate disciplinary action to be brought by the Board in the event the federal court decisions are adverse to Attorney Bennett. In addition, all testimony given and exhibits received in this proceeding will constitute evidence in any subsequent proceeding concerning this matter.

On appeal, Attorney Bennett contended that the referee's findings of fact were not supported by the evidence. In support of that contention, Attorney Bennett

made argument in support of which he consistently misstated the record, referred to "facts" which are not of record, and mischaracterized the witnesses' testimony. We determine that the record provides ample support for the referee's findings and conclusions. In many cases those findings were based on the referee's assessment of the credibility of the witnesses, and the referee almost invariably chose to believe Attorney Bennett's clients and other witnesses, rather than Attorney Bennett.

Attorney Bennett further contended that he was denied due process by virtue of the referee's order prohibiting him from filing papers in the disciplinary proceeding on his own behalf while he was represented by counsel. On June 7, 1984, the referee issued an order providing that all papers filed by Attorney Bennett while represented by separate counsel "may be ignored . . . and shall not be deemed papers in this proceeding." The referee was careful to state that his order in no way abridged Attorney Bennett's right to terminate his attorney's representation.

Attorney Bennett also argued that he had been deprived of effective representation because his attorney had become ill and was unable to timely file himself the papers Attorney Bennett filed. Further, Attorney Bennett's attorney appeared at the hearing before the referee on the Board's motion to reject Attorney Bennett's filings but was unable to argue the constitutional defenses available because of his lack of preparation due to his illness. Attorney Bennett claimed he himself missed that hearing because the court clerk directed him to the wrong room. Had he been present, he claimed he would have elected then to represent himself in the disciplinary proceeding.

Notwithstanding Attorney Bennett's arguments, he continued to be represented by counsel until after the

disciplinary hearing was held, and there is no evidence in the record that his attorney was at any time incapacitated or otherwise unable to file appropriate pleadings or motions on Attorney Bennett's behalf. The Board pointed out that, had there been any merit to the motions and papers Attorney Bennett filed, his attorney could have refiled them in accordance with the referee's order. We conclude, therefore, that Attorney Bennett's claims of violation of his constitutional rights are without merit.

Attorney Bennett also contended that the referee had no jurisdiction to proceed on the Board's First and Third Amended Complaints because a scheduling conference had not been held within 20 days after the time for answer to each of those complaints, as required by SCR 22.13(1). We reject this argument, as the record discloses that the time to answer the First Amended Complaint was extended at the request of Attorney Bennett, and a scheduling conference was held within the 20-day period, although it was subsequently adjourned several times, most often at Attorney Bennett's request.

With respect to the Third Amended Complaint, concerning which Attorney Bennett filed a motion to dismiss together with his brief on appeal, that complaint added to the previous allegations that Attorney Bennett engaged in unprofessional conduct on the basis of the bankruptcy court's report. The record discloses that the complaint was filed upon stipulation of the parties and agreement of the referee and that Attorney Bennett made no request that a scheduling conference be held following the filing of his answer to that complaint. We agree with the Board's argument that the 20-day period provided by SCR 22.13(1) does not apply to subsequent scheduling conferences in the same proceeding and that the holding of subsequent conferences is within the dis-

cretion of the referee in response to the filing of amendments to the original complaint. Further, SCR 22.23(1) provides: "Time limitations are directory and not jurisdictional except as is otherwise provided in the rules." There is no provision in SCR 22.13 to the effect that the failure to hold a scheduling conference within the time specified would defeat jurisdiction in the disciplinary proceeding.

Finally, Attorney Bennett alleged that certain judges, attorneys and creditors working in bankruptcy have conspired to hinder his bankruptcy practice, that the court's rules governing attorneys' professional responsibility violate equal protection and due process principles and constitute an unlawful delegation of judicial authority, and that the Board has acted in an arbitrary and capricious manner and is subject to undue influence. We reject these unsupported allegations.

Accepting the referee's findings of fact and conclusions of law, we determine that a six-month suspension of Attorney Bennett's license is appropriate discipline for his unprofessional conduct in these matters. It is also appropriate that, prior to the reinstatement of his license, Attorney Bennett be required to demonstrate an understanding and appreciation of the requirements of bankruptcy practice and that he do so by obtaining additional education in the area of bankruptcy, creditors' and debtors' rights, and related areas of the law.

IT IS ORDERED that the license of Attorney John H. Bennett to practice law in Wisconsin is suspended for six months, commencing January 1, 1986.

IT IS FURTHER ORDERED that, as a condition of reinstatement of his license, Attorney Bennett have obtained 15 credits of continuing legal education approved by the Board of Attorneys Professional Competence in bankruptcy, creditors' and debtors' rights, and related

areas of the law, those credits to be obtained subsequent to the date of this order and in addition to the continuing legal education required by SCR chapter 31.

IT IS FURTHER ORDERED that within 120 days of the date of this order Attorney John H. Bennett pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing by Attorney Bennett of his inability to pay the costs within the time specified, the license of Attorney John H. Bennett to practice law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED that Attorney John H. Bennett comply with the provisions of SCR 22.26 concerning the requirements of a person whose license to practice law in Wisconsin has been suspended.