IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
John BENNETT, Attorney at Law.

Supreme Court

*No. 93–3306–D. Submitted on briefs January 25,
1995.—Decided March 6, 1995.*

(Also reported in 527 N.W.2d 691.)

For John H. Bennett the cause was submitted on
the briefs of *John H. Bennett,* Milwaukee.

For the Board of Attorneys Professional Responsibility the cause was submitted on the brief of *James C. Reiher* and *von Briesen & Purtell, S.C.,* Milwaukee.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license revoked.*

Attorney John H. Bennett appealed from the referee's findings of fact and conclusions of law that he had engaged in professional misconduct and from the referee's recommendation that the court revoke his license to practice law as discipline for that misconduct. The misconduct concerned Attorney Bennett's failure to act with reasonable diligence and promptness in representing a divorce client, failing to communicate with his client concerning the divorce matter, failing to take appropriate steps to protect the client's interests when he decided to withdraw from the client's representation in that matter and engaging in conduct involving dishonesty, fraud, deceit and misrepresentation during the course of this disciplinary proceeding.

We determine that the recommended license revocation is appropriate discipline to impose for Attorney Bennett's professional misconduct established in this proceeding. This is the third time the court has had occasion to discipline Attorney Bennett for professional misconduct and the misconduct considered in this proceeding, in particular his dishonest conduct in the course of the disciplinary proceeding, establishes his unfitness to be licensed to represent others in the Wisconsin legal system.

Attorney Bennett was admitted to the Wisconsin bar in 1961 and practices in Milwaukee. In this disciplinary proceeding he asserted that he had retired from the practice of law but still maintains a law office in

Milwaukee. He was suspended from membership in the State Bar for failure to pay association dues and thereby has been ineligible to practice law since November, 1994.

Attorney Bennett has twice been disciplined by the court for professional misconduct: in 1985, the court suspended his license for six months as discipline for his lack of competence in representing several clients in bankruptcy proceedings and misrepresentation in his preparation and filing of bankruptcy forms and for having permitted a client to believe that he could solve a problem in a bankruptcy proceeding by some "extra-legal" way, suggesting his ability to improperly influence the court, *Disciplinary Proceedings Against Bennett,* 126 Wis. 2d 399, 376 N.W.2d 861 (1985); in 1988, the court again suspended his license for six months, consecutive to the prior suspension, as discipline for having charged and collected fees for services to be rendered on behalf of a client in a bankruptcy proceeding in respect to issues he had already settled and for his failure to remove various judgments recorded against his client but telling the client that he had done so, *Disciplinary Proceedings Against Bennett,* 146 Wis. 2d 723, 432 N.W.2d 101 (1985).

Based on testimony and documentary evidence presented at a disciplinary hearing, the referee, Attorney John R. Decker, made the following findings of fact. A man retained Attorney Bennett to commence a divorce proceeding and, at his request, filled out a questionnaire. The client and Attorney Bennett agreed that the total fee for handling the divorce action would be $350, in addition to an estimated $101 in disbursements. The space on the questionnaire for information concerning "payment plan" was blank when the client completed and signed the questionnaire; subsequently,

it set forth in Attorney Bennett's handwriting "None—fees must be paid in full before taking case! Final hearing only."

It was contemplated that the client would be the petitioner in the divorce action, the action would be commenced in Milwaukee county and it would be uncontested, as the parties owned no real estate and previously had divided all of their personal property. The client agreed that his spouse would have custody of their minor child and that he would be required to make child support payments but specified to Attorney Bennett that he did not wish to pay his spouse maintenance, nor did he wish to contribute to her attorney fees. One week after their initial meeting, the client paid $150, which Attorney Bennett considered a retainer in partial payment toward his total fee.

Before Attorney Bennett could commence an action, the client's spouse filed a divorce action in Kenosha county. Her attorney wrote to Attorney Bennett that he understood he was representing the husband and asked whether he would admit service of the divorce petition. Attorney Bennett responded by telephone that he was not authorized to admit service for the husband but he did not deny that he was representing the husband. In March, 1990 the client was served with the divorce summons and petition, which he turned over to Attorney Bennett together with an additional payment of $100 toward his total fee. At the end of that month, the client provided Attorney Bennett with copies of his wage stubs, which Attorney Bennett sent to the wife's attorney after having discussed the case with him.

On April 3, 1990, Attorney Bennett and his client appeared at the initial hearing in the divorce matter before a family court commissioner, where Attorney

Bennett filed a preliminary financial statement he signed as the husband's attorney. The temporary order issued at the conclusion of that hearing identified Attorney Bennett as the husband's attorney and he was given a copy of the order. That order provided that the parties were to file joint income tax returns and Attorney Bennett referred his client to another attorney to prepare them. Attorney Bennett did not give his client a copy of the order for income assignment the court mailed to him as the client's attorney a few days after that hearing.

Although he later contended that he had been retained and agreed to represent the client only for purposes of the initial divorce hearing, Attorney Bennett did not tell his client following the initial hearing that he would not represent him further in the divorce action unless his fees were paid in full. Attorney Bennett continued to communicate with the wife's attorney during the following months, never informing him or the court that he was no longer the husband's attorney in the matter. On May 18, 1990, Attorney Bennett sent his client an invoice including a $300 charge for "balance due on divorce."

After the initial divorce hearing concluded, the client brought to Attorney Bennett's attention an application for a child support order with which he had been served, as well as an order for hearing on that application set for April 30, 1990. When the client told Attorney Bennett that the hearing date would conflict with and might jeopardize his employment, Attorney Bennett told him he would have the hearing adjourned.

Attorney Bennett never contacted the court regarding the hearing scheduled for April 30, 1990 and no appearance was made on behalf of the client at that hearing. As a result, a capias was issued and, because

641

it bore an incorrect address, the client did not learn of it until he was taken into custody on September 7, 1990. The referee found that the capias was issued because of Attorney Bennett's failure to seek adjournment of the April 30 hearing, which he had told his client he would do. When the client was arrested on the capias, he was required to post $250 bond, which he never recovered.

When the client learned that the hearing in the support matter had been rescheduled, he telephoned Attorney Bennett, asking that he take care of the matter or have it adjourned. Attorney Bennett said he would take care of it but he did nothing in regard to it, with the result that a second capias against his client was issued.

In the divorce action, Attorney Bennett did not tell his client of the family court commissioner's scheduling order he had received directing the parties and their attorneys to appear in person for a pretrial conference and no appearance was made on behalf of the client at that conference. Attorney Bennett also did not tell his client that he had received a motion from opposing counsel seeking modification of the temporary order and no appearance was made on behalf of the client at the hearing on that motion.

Attorney Bennett did not notify his client of a motion for default judgment based on his failure to appear at the pretrial conference and, as a result, a divorce judgment was entered in accordance with recommendations made by opposing counsel, including a provision for $75 per week maintenance for the petitioner, an award to the petitioner of an automobile the husband had purchased subsequent to the commencement of the action and an order for a $750 contribution to the petitioner's attorney fees. Attorney Bennett did not inform his client of proposed findings, conclusions

and judgment he received from opposing counsel following the default judgment nor did he convey to the court any objection to them.

Several times during the summer of 1990, the client called or visited Attorney Bennett's office because his wife had told him he and his attorney had missed court appointments and had not responded to communications from her attorney. When told of those accusations, Attorney Bennett reassured his client that no court dates had been set and none could have been missed. The referee found that Attorney Bennett's statements were false.

Because his name appeared on the parties' tax returns, the federal and state refund checks were sent to Attorney Bennett in late July, 1990. Attorney Bennett did not tell his client he had received those checks nor did he give them to him when he gave the client a copy of the income tax returns and divorce papers on September 25, 1990. Attorney Bennett also did not tell opposing counsel or the family court commissioner that he had received those refund checks but he retained them until late October, 1990, when he endorsed both of them and gave them to his client.

Attorney Bennett testified at the disciplinary hearing that he had given his client both refund checks at a meeting in his office in late July, 1990 and that the client returned both of the refund checks to him several weeks later and, for reasons unknown, did not ask for them until late October, 1990. He also testified that he had not opened the envelope containing the federal check and did not endorse it, claiming that his client must have forged his endorsement on it. The referee found that Attorney Bennett wilfully testified falsely.

The Board of Attorneys Professional Responsibility (Board) wrote Attorney Bennett on June 3, 1991

643

that it had begun an investigation into his client's grievance and requested a response within 20 days. When it did not receive a response within that time, the Board sent him a second, certified letter on July 1, 1991. The referee found that Attorney Bennett's testimony that he did not receive either of those letters was false, particularly in light of the fact that on or about June 27, 1991 he sent a letter to the Board apparently responding to its first letter. The referee also found to be false Attorney Bennett's claims in his response that he had informed his client that if he wanted him to represent him further in the divorce he would have to pay the balance of his fee in full and that he had appeared "specially" at the initial divorce hearing only and never represented the client generally in the proceeding.

In a subsequent response to the Board's specific inquiries, Attorney Bennett sent what purported to be a copy of a July 2, 1990 letter he had written to opposing counsel in the divorce action stating, "Please be advised that I am not representing [the respondent] in the above captioned divorce action." The referee found that Attorney Bennett never notified opposing counsel that he was not representing the husband in that action and that the letter Attorney Bennett produced was false evidence he had fabricated.

In January, 1992 the Board again wrote to Attorney Bennett asking specific questions. The referee found that in his response to that inquiry, Attorney Bennett made the following false statements: that his client had forged his name and the client's wife's name to one of the tax refund checks and cashed it, that at the initial divorce hearing he told the client he would have to pay the balance of his fee in full before he could represent him further, except for the tax return mat-

ter, that he was charging $250 for the initial hearing plus $100 for an initial conference and contacts with opposing counsel to reach a stipulation, that his client never provided him a toll-free telephone number where he might be reached at his place of employment, that he forwarded to his client on September 4, 1990 letters he had received in the divorce matter while on vacation during the summer, that on several occasions he told his client he was no longer representing him and that he appeared only specially at the initial hearing and did not make a general appearance. The referee also found untrue Attorney Bennett's claim that in early September, 1990 he put together a packet of unopened correspondence he had received from opposing counsel and the court commissioner's office in the divorce action and sent that material with a cover letter to the client.

On the basis of the foregoing facts, the referee concluded that Attorney Bennett failed to act with reasonable diligence and promptness in representing his divorce client, in violation of SCR 20:1.3,[1] and failed to communicate with his client, in violation of SCR 20:1.4,[2] by failing to read or respond to correspondence and motion papers from opposing counsel and

[1] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

[2] SCR 20:1.4 provides:

**Communication**
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

notices and orders from the court commissioner, failing to timely inform his client of his receipt of that correspondence and other materials, failing to timely advise his client of orders and hearing dates in the matter, failing to timely inform his client, opposing counsel and the court of his intention to withdraw from his client's representation, failing to appear at all hearings held in the divorce case after entering a general appearance on the client's behalf at the initial hearing and failing to obtain adjournments of or appear at the hearings in the child support matter.

The referee also concluded that Attorney Bennett violated SCR 20:1.16(d)[3] by failing to tell his client of his intent to withdraw from representation, failing to inform his client, opposing counsel and the court of his withdrawal, failing to timely return to the client all papers and property relevant to the divorce matter, failing to obtain a stipulation from the client concerning his withdrawal and file a motion to obtain court approval and failing to seek an adjournment of the divorce and child support actions after having told his client that no hearings were pending or that he would take care of the matters.

Finally, the referee concluded that Attorney Bennett engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of SCR

---

[3] SCR 20:1.16 provides, in part:

**Declining or terminating representation**

. . .

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

20:8.4(c),[4] by falsely claiming he had told opposing counsel that he had withdrawn from the client's representation, creating false documentary evidence concerning that withdrawal, falsely claiming he had sent the client a packet of materials he had received on his behalf in the divorce matter, falsely claiming he had given the client tax refund checks, falsely accusing his client of forgery, wilfully and repeatedly making numerous false statements to the Board concerning the facts of his representation of the client and wilfully testifying falsely to material facts in the disciplinary proceeding.

As discipline for that misconduct, the referee recommended the most severe discipline, license revocation. In making that recommendation, the referee determined that Attorney Bennett had abandoned his client during the course of active litigation without telling his client, opposing counsel or the court that he no longer considered himself to be that man's attorney. Moreover, without any reasonable basis to believe he had been relieved of responsibility for representing the client, Attorney Bennett held mail from opposing counsel in the pending proceeding for months without opening it or forwarding it to his client, which the referee considered "a gross dereliction of professional responsibility evinc[ing] wilfulness and bad motive."

The referee also noted that Attorney Bennett's defense in the disciplinary proceeding consisted mainly of the vilification of his former client by unfounded

---

[4] SCR 20:8.4 provides, in part:

**Misconduct**
It is professional misconduct for a lawyer to:

. . .

(c)   engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

accusations, which conduct the referee deemed "base and vile." The referee rejected Attorney Bennett's position that his client had suffered very little financial harm and that his incarceration had lasted only a few hours. The referee found Attorney Bennett's "deliberate indifference" to his client unacceptable in light of the client's very limited financial resources and the fact that he never before had been arrested or incarcerated.

The referee's recommendation of license revocation is also in response to Attorney Bennett's fabrication of evidence and presentation of false testimony at the disciplinary hearing and his misrepresentations to the Board during its investigation. The referee stated:

> "Through his continued and unmitigated perfidy, through his evident disregard for his professional obligations, and through his frivolous disdain for the disciplinary system, [Attorney Bennett] has demonstrated inability to conform his behavior to the minimal professional standards which must be observed by any attorney and officer of the court. [Attorney Bennett] lacks the honesty and integrity necessary to be entrusted with representation of others in the legal system."

In his appeal, Attorney Bennett has presented no meritorious argument, basing his objection to the referee's report primarily on the referee's assessment of the credibility of the witnesses and his failure to give Attorney Bennett's testimony any weight. On the issue of discipline, Attorney Bennett took the position that, even if the referee's findings and conclusions are accepted, his misconduct does not warrant license revocation because his client suffered relatively little harm and it was limited to a contribution to his former spouse's attorney fees in the divorce proceeding. Attor-

ney Bennett's argument that he was under no professional obligation to represent the client in the child support matter because it was independent of the divorce action for which he had been retained ignores the fact that when the client told him of the hearing originally scheduled and subsequently rescheduled in the support proceeding, Attorney Bennett told him he would take care of the matter.

We adopt the referee's findings of fact, as they have not been shown to be clearly erroneous, and we adopt the conclusions of law based on those findings. We agree with the referee that by his misconduct in his representation and non-representation of the divorce client and by his misconduct in the course of the disciplinary investigation and proceeding, Attorney Bennett has established that he is unfit to be licensed to practice law. We note that the referee made no recommendation in respect to restitution to the client for harm caused by Attorney Bennett's misconduct, as the client had pursued a civil malpractice action against Attorney Bennett and that action was settled.

IT IS ORDERED that, effective April 10, 1995, the license of John H. Bennett to practice law in Wisconsin is revoked.

IT IS FURTHER ORDERED that within 60 days of the date of this order John H. Bennett pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that John H. Bennett comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.